UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAIDLAW TRANSIT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:05-CV-944 CAS |
| ) | |
| INTERNATIONAL BROTHERHOOD OF ) | |
| TEAMSTERS LOCAL 610, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. For the following reasons, the Court will deny plaintiff's motion for summary judgment and motion to vacate arbitration award and grant defendant's motion for summary judgment to enforce the arbitration award.

**I. Background**

Plaintiff Laidlaw Transit, Inc. ("Laidlaw") filed this action against International Brotherhood of Teamsters Local 610 ("Union") seeking an order vacating an arbitration award granted in favor of the Union after an arbitration hearing. The Union filed a counterclaim seeking enforcement of the arbitration award and attorneys' fees. Both parties have filed cross motions for summary judgment and agree that no disputed material facts exist.

**II. Summary Judgment Standard**

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. <u>City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). In determining whether the moving party has met its burden, all evidence and inferences are to be viewed in the light most favorable to the non-moving party. <u>Johnson v. Enron Corp.</u>, 906 F.2d 1234, 1237 (8th Cir. 1990).

**III. Discussion**

    **A. Facts**

For purposes of summary judgment, the Court finds the following facts as true. Laidlaw is a transportation company that provides services for schools and other entities nationwide, including the St. Louis area. In 1999, Laidlaw entered into a contract to provide transportation services to the Special School District in St. Louis, Missouri. Due the significant increase in its workforce, which included many Union members, Laidlaw entered into a collective bargaining agreement ("CBA") with the Union effective July 1, 1999. The CBA outlined all aspects of the relationship between the company and the Union, including the benefits available to Union members.

One of the benefits available to the Union members was a 401(k) plan. This plan allowed employees to deposit a percentage of their income into the 401(k) account. While the plan did not allow for Laidlaw to deposit a matching contribution directly into the plan, Laidlaw agreed to pay employees who contributed to the plan a matching contribution up to three percent (3%) of their

income. This matching contribution was paid to the employees directly, with all applicable taxes withheld.

The CBA provides as follows:

A. Employees shall be covered by a negotiated 401-k program. The Employer shall match the employees' contributions dollar for dollar each Plan year, up to a maximum of 3% of the employees' gross wages during the Plan year. Such match shall be paid to the employee in one (1) payment, at the end of the Plan year for which the contributions were made.

**EXAMPLE**: Throughout the 401-k Plan year, an employee has a specific percentage of their gross earnings withheld from their payroll to be deposited into their 401-k account. At the end of their 401-k Plan year, the Employer pays the employee in one (1) payment an amount equal to the employee's contributions, not to exceed a maximum of 3% of the employee's gross earnings during the Plan year.

(Def.'s Ex. 3). Throughout the term of the CBA, employees who were not employed at the end of the Plan year, December 31, did not receive the matching payment. Over forty individuals who were terminated for whatever reason prior to December 31 failed to receive a matching payment at the end of the Plan year. The Union never grieved the nonpayment of these matching contributions to any employee, even when filing grievances on other issues that involved those same employees.

In early 2004, Laidlaw received notice that the Special School District would not renew its contract with Laidlaw. Because of the loss of this contract, Laidlaw informed the Union that it would not renew the CBA, and that the contract and employment of the Union members would end on June 30, 2004. Laidlaw attempted to negotiate with the Union regarding the effects of the termination of the CBA. During discussions with the Union, Laidlaw asserted that because the laid-off employees would not be employed on December 31, they would not receive a matching contribution for 2004. The Union disagreed because it believed that the employees were entitled to the contribution. Thereafter, the Union submitted the matter to arbitration.

3

Arbitrator Josef Rohlik was chosen as arbitrator of the dispute. At the arbitration, the parties stipulated to facts. Counsel for both parties made presentations to the Arbitrator and the proceedings were closed. No witnesses were called at the arbitration and no transcript was prepared. Following the arbitration, the parties reduced their stipulated facts to writing. The stipulated facts included the following:

> 5. The Plan Year coincides with the calendar year and therefore the Plan Year always ends on December 31st.
> 6. The Company paid matching 401(k) payments only to participants who remained employed at the end of the any [sic] Plan Year.
> 7. Employees who were separated from employment (e.g., resignation or termination) at anytime prior to December 31st in any Plan Year did not receive a matching payment. The Union did (would) not proceed with a grievance from an employee under these circumstances (if they had gotten one) because it would be without merit.

(Def.'s Ex. 2). The parties were supposed to provide the Joint Stipulation to the Arbitrator with their post-hearing briefs. The Union mistakenly sent their brief early, without the stipulation of facts. Laidlaw provided the stipulation of facts to the Arbitrator with its brief. The Union's attorney sent e-mails to Laidlaw's counsel asserting, "Alright the stip is ok . . . Our brief got mailed by mistake. Sorry. Take whatever time you need and tell the Arb I agreed" and later asserting, "Just send the stip with your brief and say we agreed to the facts." (Pl.'s Ex. 5).

On April 24, 2005, the Arbitrator rendered his award on the grievance granting an award to the Union.[1] In his decision, Arbitrator Rohlik stated:

> 4. The Company did not pay the matching contribution to employees who resigned or were discharged before December 31. If the Union knew that the Company did not pay the matching contribution, the Union silence could be interpreted as an acquiescence in the Company's interpretation of Article 28A. While it is undisputed that the Union did not grieve, there is no evidence that the Parties ever discussed this issue in connection with a discharge or resignation, and there is no evidence that the Union had any notice of the Company's practice. For the Union to have notice it

---

[1] In the Arbitrator's decision, Laidlaw is referred to as "the Company."

4

> would have had to come either from the Company or from an employee who did not receive a payment of the matching contribution at the beginning of January after having resigned or having been discharged during the previous year. There is no evidence on the number of employees who resigned or were discharged. Under these circumstances the arbitrator will not infer that the Union must have had notice of the Company's practice. For all these reasons, the grievance must be sustained.

(Pl.'s Ex. 6, pp. 8-9). Further, in a footnote the Arbitrator stated:

> The Company Brief contains "Joint Stipulation of Facts." The arbitrator has not received any confirmation of this "stipulation" from the Union. Stipulation no. 7 goes beyond what was stipulated to, or generally agreed, at the hearing to the extent that it states the Union did not "proceed with a grievance . . . because it would be without merit."

(Pl.'s Ex. 6, p. 8, n.2). The arbitrator did not contact plaintiff's counsel or defendant's counsel to confirm the Union's agreement to the stipulation.

Laidlaw's counsel then wrote to the Arbitrator asserting that the Union agreed to the stipulation and requesting a reconsideration of the arbitration award.[2] The Arbitrator responded to Laidlaw's correspondence stating he could not reconsider his decision because there was no joint request to reconsider before him. A portion of the response addressing the merits of Laidlaw's request is as follows:

> Given counsel's statement that evidence deemed dispositive was ignored the following may be noted:
>
> (i) Paragraph 4 of the Findings follows the textual interpretation and reads as it reads.

---

[2]In its request for reconsideration, Laidlaw's counsel stated, "The Employer respectfully requests you to reconsider your Award and to dismiss the grievance based on evidence that you deemed to be dispositive but ignored . . . . If you were confused it is implausible why you wouldn't contact Mr. Suggs or me regarding the Joint Stipulation, a document you so heavily 'hinged' your decision upon." Laidlaw's counsel also stated, "You ignored that stipulation, however, because you determined (without a basis to do so) that the Union did not or (would not) stipulate to such a fact. . . . . It should be clear to you now, however, that the Union did indeed stipulate to having notice of the Employer's practice and that it previously declined to pursue grievances from employees under these circumstances because they would be without merit." (Def.'s Ex. 7).

5

(ii) E-mail of counsel of the Union was never submitted to the arbitrator prior to the issuance of the award.

(iii) Footnote 2 of the award is specific. It states that the Union has not conceded in the hearing that any grievance prior to the events in question here and protesting the failure to pay the contribution would be without merit. If such a statement was made it would have effectively ended the case.

I find the suggestion of ignoring evidence specifically addressed in the award rather peculiar.

(Pl.'s Ex. 8). Laidlaw has refused to pay the award determined by the arbitrator.

**B. Federal Courts' Review of Arbitration Awards**

The Federal Arbitration Act provides four grounds for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). In addition, the Eighth Circuit has also recognized that an award may be vacated if it "evidences manifest disregard for law." St. John's Mercy Medical Center v. Delfino, 414 F.3d 882, 884 (8th Cir. 2005) (citing Kiernan v. Piper Jaffray Cos., 137 F.3d 588, 594 (8th Cir. 1998)). The "manifest disregard for law" standard is very narrow and has been applied in only one reported decision in this Circuit. Delfino, 414 F.3d at 884. To establish manifest regard for the law, a movant must demonstrate that an arbitrator cited relevant law and then ignored that law. Gas Aggregation Servs., Inc. v. Howard Avista Energy, LLC, 319 F.3d 1060, 1069 (8th Cir. 2003) (establishing standard for manifest disregard of law).

The scope of judicial review of arbitration awards under collective bargaining agreements is highly deferential and extremely limited. See Amalgamated Transit Union, Local No. 1498 v.

Jefferson Partners, 229 F.3d 1198, 1200 (8th Cir. 2000). The arbitrator's award will be upheld as long as it "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987) (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960) ("Enterprise Wheel")). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. "In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority." Lackawanna Leather Co. v. United Food & Comm'l Workers Int'l Union, Dist. 271, 706 F.2d 228, 230-31 (8th Cir. 1983) (en banc).

### C. Review of Arbitration Decision

Laidlaw asserts three grounds for vacating the arbitrator's award in this action. First, plaintiff asserts that the arbitrator committed misconduct and exceeded his authority by refusing to consider undisputed evidence, i.e., the Joint Stipulation of Facts plaintiff submitted with its post-hearing brief. Second, Laidlaw contends that the Arbitrator committed misconduct because his failure to consider the stipulated fact precluded Laidlaw from submitting further evidence that could have supported the stipulations. Finally, Laidlaw asserts that the arbitrator's misconduct amounts to a manifest disregard of the law.

#### 1. Joint Stipulation of Facts

Laidlaw contends that it was misconduct and outside of the arbitrator's authority not to consider the Joint Stipulation of Facts because when the parties are in agreement on the facts at issue, an arbitrator cannot come to a contrary conclusion with no basis to do so. Laidlaw believes that if the Arbitrator had accepted the stipulation, specifically stipulation 7, the Arbitrator would have ruled

in its favor. Therefore, Laidlaw believes that the Arbitrator committed misconduct and exceeded his authority.

Based on the facts in this case, the Court disagrees. In his opinion, the Arbitrator analyzes in sufficient detail the evidence presented at the hearing and the parties' arguments as presented in their briefs. In the arbitration order, the Arbitrator found there was no evidence in the record that the Union had notice that Laidlaw did not pay distributions to employees who were not employed on December 31 prior to the Special School District dismissals. Stipulation number 7 does not state that the Union had such notice. The fact that Laidlaw never paid distributions for persons not employed on December 31 does not necessarily mean that the Union had notice of those claims before the issue arose in connection with the termination of the contract with the Special School District. Therefore, even if the Arbitrator found that the facts were stipulated, the Arbitrator did not have to assume that the Union had such notice or that the Union believed this particular issue was addressed in the CBA.

The only dispute regarding stipulation 7 concerns whether the Union stipulated that any prior grievances were meritless. According to Laidlaw's facts, after the hearing, the parties were instructed to submit a joint stipulation of facts to the Arbitrator. (Pl. Fact ¶ 11). The Union mistakenly filed its brief early without the agreed stipulation of facts. The Union instructed Laidlaw to submit the stipulation and tell the Arbitrator that the Union gave its consent. (Pl. Fact ¶ 11). Laidlaw submitted the stipulation of facts with its post-hearing brief.

The Arbitrator noted that Laidlaw submitted a Joint Stipulation of Facts, without a confirmation from the Union that it had consented to this stipulation. At the time the decision was rendered, the Arbitrator had no knowledge of the e-mail correspondence between counsel and there was no other document evidencing the Union's consent, e.g., a signature page from Union's counsel. This stipulation was not included with defendant's brief. The Arbitrator did not receive an

8

explanation why the Union did not submit the stipulation with its brief. Further, the Arbitrator commented that stipulation 7 went beyond what was stipulated to or agreed to at the hearing "to the extent that it states that the union did not proceed with a grievance . . . because it would be without merit." (Pl.'s Ex. 6, p. 8, n.2).

Based on the foregoing, the Arbitrator had no reason to believe that the stipulation of facts was a joint filing. Laidlaw has failed to explain why the Arbitrator should find a fact introduced by one party and not acknowledged by the other side to be a joint stipulation, especially if the Arbitrator noted that this stipulation was contradictory to the evidence presented at the hearing. The Arbitrator did not state that he discounted the entire stipulation, but rather stated the assertion that other grievances would have been without merit was contradictory to the Union's position at the hearing and in its brief.

The case law Laidlaw cites to support vacating the award is distinguishable based on the facts of each case. First, in John Morrell & Co. v. Local Union 304A, United Food and Commercial Workers, AFL-CIO, 913 F.2d 544, 563 (8th Cir. 1990), the arbitrator's decision was vacated because the arbitrator ruled on an issue that had already been decided by a jury in a court of law. In Morrell, the Eight Circuit found that the arbitrator's lack of a transcript or trial record "did not authorize him to sit as an appellate court and consider anew the rulings of the district court and the verdict of the jury." Morrell, 913 F.2d at 563. Although Laidlaw claims the Morrell case is analogous to the instant matter, a "stipulated fact" presented by one party without acknowledgment from the other side and determined to be contradictory to the evidence at the hearing is not equivalent to a jury verdict. As a result, the Morrell case does not require vacation of the Arbitrator's award.

The other cases cited by Laidlaw also fail to support its position because the circumstances are factually distinguishable. See Valentine Sugars, Inc. v. Donau Corp., 981 F.2d 210, 214 (5th Cir.

9

1993) (court found that the mistake by the arbitrator was not material or relied upon by the arbitrator in making its award); Challenger Caribbean Corp. v. Union General de Trabajadores de Puerto Rico, 903 F.2d 857, 868 (1st Cir. 1990) (reversing a district court decision that vacated an arbitration award, because although the parties stipulated to a specific fact regarding remedies, the arbitrator did not err in determining that the remedy limitations in the stipulation were inapplicable to employees laid off in violation of the CBA); International Bhd. of Elec. Workers, Local 429 v. Toshiba America, 879 F.2d 208, 210 (6th Cir. 1989) (affirmed the vacation of arbitration award because there was no dispute that the parties had stipulated the employees engaged in an illegal walkout and because of that stipulation the arbitrator was required to apply the CBA, which required enforcing the employees' discharges); Hoteles Condado Beach, La Concha, and Convention Center v. Union de Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985) (court vacated arbitration award where arbitrator accepted transcript at hearing but denied opportunity to present additional evidence after arbitrator gave no weight to transcript); Totem Marine Tug & Barge, Inc. v. North American Towing, 607 F.2d 649, 651 (5th Cir. 1979) (arbitration panel exceeded its authority when it issued an award for a type of damages not requested by the party and which the party acknowledged in its brief it was not entitled to have); Ergobilt, Inc. v. Bodybilt, Inc., No. Civ. A.3:97-CV-2548-L, 2002 WL 1489521 (N.D. Tex. July 9, 2002) (award vacated where the parties actually stipulated on the record at the arbitration hearing that the attorneys' fees would be apportioned according to the claims upon which each party was successful and the prevailing party sent a letter acknowledging that it consented to an apportionment of fees). Therefore, the Court finds that the Arbitrator did not commit misconduct in finding that the Union did not consent to the Joint Stipulation of Facts presented by Laidlaw.

### 2. Additional Evidence

Next, Laidlaw asserts that by not accepting the stipulated facts, the Arbitrator precluded it from introducing further evidence that could have supported the stipulations. Laidlaw asserts that it had no reason to believe that the Arbitrator would reject the stipulations of fact, the Union did not object to the stipulations at the hearing, and the Union would have submitted the same stipulations if its brief had not been filed early. These assertions may be true, except for one important issue. The Arbitrator did consider the stipulated facts submitted by Laidlaw at the hearing and the written ones, as evidenced in the Arbitrator's opinion. But, the Arbitrator found that part of stipulation 7 was inconsistent with the stipulations made during the hearing. Laidlaw has not demonstrated what additional evidence it would have used to bolster its stipulation at the hearing because the Arbitrator still may have found any additional evidence at the hearing to be contradictory to the stipulated facts submitted in writing.

### 3. Manifest Disregard of the Law

Finally, Laidlaw asserts that the Arbitrator's opinion constituted a manifest disregard of the law. As stated previously, Laidlaw "bears the burden of proving that the [arbitrator was] fully aware of the existence of a clearly defined governing principle, but refused to apply it, in effect ignoring it." Stark v. Sandberg, Phoenix & Von Gontard, 381 F.3d 793, 802 (8th Cir. 2004). Laidlaw asserts that because the Arbitrator clearly disregarded a fact that is undisputed and central to his decision, he committed a manifest disregard for the law. The Court finds that Laidlaw has not met the burden to establish an manifest disregard of the law. Disagreement with an arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside an award. Stark, 381 F.3d at 802. "Manifest disregard of the law is more than a simple error in law or a failure by the arbitrators

to understand and apply it; and it is more than an erroneous interpretation of the law." There is no evidence that the Arbitrator's actions met the very high standard for finding a manifest error of law.

## IV. Attorney's Fees

Defendant requests attorney's fees for plaintiff's refusal to pay the arbitration award. "A court may assess attorney fees against any party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." International Union, United Auto., Aerospace, and Agric. Implement Workers of America v. United Farm Tools, Inc., 762 F.2d 76, 77 (8th Cir. 1985) (citations omitted). "An unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorney's fees." Id. The Court finds that defendant has not shown that plaintiff's actions constitute bad faith. Therefore, the Court will not award defendant attorney's fees.

## V. Conclusion

For the foregoing reasons, the Court will deny plaintiff's motion to vacate arbitration award and motion for summary judgment. The Court will grant defendant's motion for summary judgment and grant defendant judgment on its counterclaim to enforce the arbitration award.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to vacate arbitration award is **DENIED**. [Doc. 1]

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment is **DENIED**. [Doc. 14]

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment to enforce the arbitration award is **GRANTED**. [Doc. 11]

An appropriate judgment will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>30th</u> day of March, 2006.